## DECISION OF CHIEF JUSTICE LEE.—AT CHAMBERS.

### FRANCIS DOUGHERTY vs. JAMES E. WILCOX.

Defendant, a shipping master, undertook that one Silas Philips should sail as third officer on board of plaintiff's ship; or that the defendant would return the advance money paid by plaintiff: Philips was taken sick of the small pox, and died before the ship sailed. Held: that defendant must return the advance money.

"The parties in the above entitled cause, by their respective attorneys, appear before the Hon. W. L. LEE, and submit to his decision the question between them on the statement of facts following.

"On the 21st day of October, 1853, the plaintiff paid the defendant the sum of one hundred and twenty dollars, and received for the same the receipt hereto attached. On the same day the defendant paid to a seaman, a third officer, the said sum of $120, as an advance, and procured him to be regularly shipped on the Shipping Articles of the ship "Golconda," with the approval of the plaintiff, the defendant promising that the said third officer, Silas Philips, should sail on board said vessel from the port of Honolulu. About three weeks after said agreement, the plaintiff called upon the defendant, and stated that the said Silas Philips was in the Marine Hospital, sick with the small pox; and a short time thereafter required of the defendant that he should place on board said ship "Golconda," the said Philips, third officer, as aforesaid; which the defendant said he could not then do, as it was impossible to remove him at that time. The plaintiff then demanded the return of the $120, which the defendant refused to do.

"Previous to the sailing of the "Golconda," Silas Philips died.

"The question upon the above statement is, whether the defendant is responsible to the plaintiff for the above mentioned sum of $120.

"The decision of Judge LEE upon this matter to be binding on both parties.

"(Signed)        A. B. BATES, Attorney for Plaintiff.
"J. D. BLAIR, Attorney for Defendant."

### COPY OF RECEIPT ATTACHED.

$120.

"Received, Honolulu, October 21st, 1853, of Captain Francis Dougherty, of ship or vessel called the "Golconda," one hundred and twenty dollars, for advances to seamen, which I agree to refund, in case each seaman to whom the whole or any portion of

it may be advanced, fails to sail from this port in said vessel, excepting, in all instances, the refusal of the captain or agent, after having once approved.

"(Signed)          JAMES E. WILCOX & Co.

## DECISION.

" Whenever," says Lord Kenyon, "a case comes before us that is likely to be attended with hardship to the parties, a struggle naturally arises in our minds to find out, (if possible) some way of extricating all the parties from it.  In the present case, both parties are innocent; and whatever may be our decision, one party or the other must suffer."  (Hadley *vs.* Clark, 8. T. R. 265.)

This language of Lord Kenyon's is applicable to the case under consideration, and the duty of deciding it is not a pleasant one; but it must be done, and we shall proceed to examine and settle it according to the principles of law.

By the terms of the contract, Wilcox agreed to refund the $120 in case any seaman to whom the whole or any portion thereof might be advanced, failed to sail from this port in the " Golconda," except, in all instances, the captain or agent of the ship should refuse to receive the seamen after having once approved of them.  The plaintiff now charges the defendant with failing to deliver the man Philips on board the "Golconda" as by agreement, and calls upon him to refund the money advanced, according to the express terms of his contract.  In answer to this demand, the defendant says, I shipped the man with your approval, paid him the advance, and should have delivered him on board at the time of sailing, had it not been for the intervention of Providence, which rendered the delivery impossible.  The man died, and I ought not to be held answerable for his advance when I am innocent of wrong.  The sickness and death of the man was the act of God, and the question now is, will such act excuse Wilcox for the non-performance of his contract.

In one of the leading cases on the subject, that of Paradine *vs.* Jane, Aleyn 27, cited by Justice Lawrence in Hadley *vs.* Clarke, 8 T. R. 267, it is said, when a " party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident or inevitable necessity, because he might have provided against it by his contract."  The rule laid down in Paradine *vs.* Jane has been recognized as a sound one by Lord Kenyon in 8 T. R. R. 267—by Lord Ellenborough in 10 East 533, and by most of the English and American authorities up to the present time.  Chitty in his excellent treatise on contracts (8th Am. Ed. 630,) holds the same doctrine; for, says he, " the contract subsists, notwithstanding it is beyond the power of the party to perform it,—it being deemed to be his own fault and folly, that he did not thereby *expressly* provide against contingencies, and exempt himself from responsibility in certain events.  In such a case, therefore, the performance is not excused by the occurrence of an inevitable accident, or other contingency, although it was not foreseen by, or within the control of the party."  The same principle is affirmed in Story on Con-

tracts, § 463, 464, and 975, which says, " A party is not ordinarily bound to the performance of his contract unless it be both possible and legal in its nature. The rule does not, however, extend to contracts to do difficult, dangerous, or improbable acts. For if, by his *own contract*, a man create a duty or charge upon himself, he is bound thereby, notwithstanding the occurrence of any contingency, because, if he had chosen, he might have provided against it by the stipulations in his contract." After a review of the authority on the subject of excuses for the non-performance of contracts, I can find no principle of law to justify me in deciding that the defendant is not bound to keep his contract and refund the money. It has been ingeniously urged by the learned counsel for the defendant, that this case is analogous to the undertaking of special bail for the appearance of a party in court, where, if the accused dies before appearance day, the bail is freed from any liability on his bond. But the parallel does not hold good, as will be readily seen, I think, when we come to examine and compare the cases more closely. In the one a penalty is claimed, while in the other, no penalty is claimed for the non-delivery, but a simple request made for the money advanced, according to the express terms of the defendant's contract.

But, says the defendant, if the law gives me no remedy, can I not appeal to a court of *equity* for relief? We will see. Judge Story in his Equity Jurisprudence, §§ 101, 102, 103, 104, in speaking of the relief granted by courts of equity in cases of accident, says, "In the first place, in matters of positive contract and obligation, created by the party, (for it is different in obligations created by law,) it is no ground for the interference of Equity that the party has been prevented from fulfilling them by accident; or, that he has been in no default; or, that he has been prevented from deriving the full benefit of the contract on his own side. Thus if a lessee on a demise, covenants to keep the demised estate in repair, he will be bound in Equity, as well as in Law, to do so, notwithstanding any inevitable accident or necessity, by which the premises are destroyed or injured; as if they are burnt by lightning, or destroyed by public enemies, or by any other accident, or by overwhelming force. The reason is, that he might have provided for such contingencies by his contract, if he had so chosen; and the law will presume an intentional general liability, where he has made no exception. And the same rule applies in like cases where there is an express covenant (without any proper exceptions) to pay rent during the term. It must be paid, notwithstanding the premises are accidentally burnt down during the term."

" And the like doctrine applies to other cases of contract, where the parties stand equally innocent."

Thus we see, the defendant cannot avoid the liability to refund the money, as by his contract stipulated, either on the ground of Law or Equity, as laid down and practiced upon in England and the United States. In case of accident, sickness, desertion, death, or any other cause, disabling Wilcox to deliver the man on board at the time of sailing, he was responsible to refund the money, agreeably with the express terms of his contract. He made one exception in his contract, and if he wished to escape the contingency of sickness and death, he should have provided therefor by another exception. There is a multitude of cases in which equity will relieve the parties from the opera-

tion of the stern rule of the law, but this is not one of them. This is a case of hardship, no doubt, "But on the question of executing an agreement, hardship alone cannot be regarded as a sufficient ground of relief." "It will be no excuse for the non-performance of an agreement to deliver goods of a certain quality, that they could not be obtained at the particular season when the contract was to be executed. So, also, a covenant by a tenant to repair is binding, although the premises occupied by him are destroyed by fire. So, also, the sickness and consequent inability of a party to perform his contract is no excuse, because he should have guarded against such a contingency. So, also, if a person undertake to deliver goods at a particular place, without limitation of his liability in case of loss or injury, and they be destroyed on the way, he is responsible for the loss." Story on *Contracts,* §§ 463, 464.

Thus far we have been viewing this case in the light of the broad principle of excusing the party from the performance of his contract when it becomes impossible for him to perform it. But in reality this is what is termed an *alternative* contract. That is, the promiser contracts to do a certain thing, or, if not that, another. He promises that the man shall sail in the " Golconda," or, that he will refund his advance. Now, in all such contracts, if one branch of the alternative cannot be performed, the party is bound to perform the other. It has become impossible for Wilcox to perform that branch of the alternative which requires the sailing of the man, but not so with the other, which relates to the refunding of the money. The contract is possible, and I see no way for the defendant to escape its performance. Suppose the man had deserted, broken an arm or leg, or met with any other casualty, short of death, which prevented his sailing, would it be claimed that such accident excused Wilcox from the performance of his contract ? I think not; and the law makes no distinction between those contingencies and that of death. Wilcox took upon himself all the risk of delivering the man on board of the ship at the time of sailing, and although he did not foresee the contingency of death in this case, he is bound by the contract.

My judgment therefore is, that the defendant restore to the plaintiff the one hundred and twenty dollars.